UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MATILDA SIMONO,

                        Plaintiff,

      -against-

GEMCO REALTY II, LLC, and E Z PAWN CORP.,
and DAVID KAMINSKY, an individual,

                        Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

**Docket No.: 16-cv-5385**

**Jury Trial Demanded**

      Plaintiff, MATILDA SIMONO, by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against GEMCO REALTY II, LLC ("Gemco"), and E Z PAWN CORP. ("EZ Pawn"), and DAVID KAMINSKY, an individual, (collectively as "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

**NATURE OF CASE**

      1.     This is a civil action for damages and equitable relief based upon Defendants' willful violations of Plaintiff's rights guaranteed to her by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers pay wages to employees in accordance with agreed upon and conditioned terms of employment, NYLL §§ 190, 191, and 663(1); (iv) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (v) the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(3); (vi) an anti-retaliation provision of the NYLL, N.Y.

Lab. Law § 215(1); and (vii) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff worked for Defendants - - two entities that operate as a single enterprise in general, and/or joint employer with respect to Plaintiff, with one operating a pawn shop and the other managing residential properties, as well as the individual who is the Chief Executive Officer/owner and day-to-day overseer of both entities - - from 2005 through January 6, 2016. From February 2011 through March 24, 2015, Defendants required Plaintiff to work at the pawn shop's jewelry counter for either thirty-two or forty hours per week, depending on the week, and to also serve as a property manager for the Defendants' residential buildings, including the one located above the pawn shop, for an additional, on average, twenty-five hours per week. Defendants, however, as is indicated on Plaintiff's paystubs, paid Plaintiff at an hourly rate of $40.00 for only her work at the pawn shop, $60.00 per hour on those occasions when Plaintiff worked at the pawn shop in excess of forty hours per week, but nothing for the additional hours that she worked performing her property management responsibilities.  Thus, Defendants did not pay Plaintiff her straight-time wage for all hours worked per week up to forty, in violation of the NYLL, or her overtime wage at the rate of time and one-half her straight-time rate for all hours worked per week over forty, in violation of the FLSA and NYLL.  Additionally, Defendants failed to provide Plaintiff with accurate wage statements on each payday in violation of the NYLL.

3.      Making matters significantly worse, after Plaintiff complained to Defendants about their violations of the FLSA and NYLL, Defendants retaliated by: refusing to provide Plaintiff with a chair to sit in during her workday at the pawn shop; cutting Plaintiff's hours down to twenty-four per week, thereby greatly reducing her pay; and eventually terminating

Plaintiff's employment on January 6, 2016, expressly citing "because you are suing me" as the reason.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1), as one or more of the Defendants reside within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

6. At all relevant times herein, Plaintiff was an "employee" entitled to protection as defined by the FLSA, the NYLL and the NYCCRR.

7. At all relevant times herein, Defendant Gemco is a New York corporation with a principal place of business located at 1878 Lexington Avenue, New York, New York 10039.

8. At all relevant times herein, Defendant EZ Pawn is a New York corporation with a principal place of business located at 42-80 Hunter Street, Long Island City, New York 11101. EZ Pawn also operates several other pawn shop locations throughout the State of New York, including one at 1878 Lexington Avenue, New York, New York 10039, and another at 207 Broadway, New York, New York 10471.

9. At all relevant times herein, Defendant Kaminsky is an individual who is the Chief Executive Officer of the two entity Defendants. In this capacity, he oversees the day-to-

day operations of both businesses, and sets the rates of pay and work schedules for all employees at each business.

10. At all relevant times herein, all Defendants were Plaintiff's "employer" within the meaning of the FLSA and NYLL. Additionally, the qualifying annual business of Defendants Gemco and EZ Pawn exceeded $500,000, and Defendants were engaged in interstate commerce within the meaning of the FLSA as they buy and sell and utilize goods having travelled in interstate commerce, and collect cash and accept credit card payments in exchange for the sale of goods and/or rent, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.

## BACKGROUND FACTS

11. Defendant Gemco is a company that owns and manages multiple real estate properties throughout the State of New York.

12. Defendant EZ Pawn is a business that operates several retail pawn shops, including the pawn shops located at 1878 Lexington Avenue and 207 Broadway, each in New York, New York.

13. Since at least February 2011, Gemco and EZ Pawn have operated, in effect, as a single enterprise. In that respect, they share office space as well as employees, and Defendant Kaminsky sets forth the employment terms for all employees at each business, including their hours of work and pay rates.

14. Plaintiff began working for Defendant EZ Pawn in 2005 at the Lexington Avenue pawn shop as a jewelry counter employee. In this capacity, until November 2015, she worked four or five eight-hour shifts per week, and thus worked either thirty-two or forty hours per week

in that role, depending on whether it was a four or five-shift week. Sometimes she worked more than that.

15. In February 2011, Defendants assigned Plaintiff additional job responsibilities. Specifically, at that time, Defendants required Plaintiff to work as the property manager of two residential apartment buildings. From February 2011 through February 2012, Plaintiff managed two residential buildings, with one located in Queens, New York, and the other located above the Lexington Avenue pawn shop at the same address. From March 2012 through March 24, 2015, Plaintiff managed just the one building located above the Lexington Avenue pawn shop.

16. Throughout her employment working as a property manager, to complete her job, Defendants required Plaintiff to work, on average, an additional twenty-five hours per work, which were separate and apart from her hours spent working at the pawn shop. As part of her role as property manager, Plaintiff was responsible for: responding to and addressing Defendants' tenants' complaints and concerns regarding repairs, rent, and emergencies; collecting rental payments from the tenants; reporting to the building in the event of an emergency at any hour; showing vacant apartments to and accepting applications from prospective tenants; corresponding with third parties, such as repair personnel, utility companies, and housing agencies for Section 8-related issues; monitoring the work of the superintendent and other repair personnel, such as handymen, plumbers, and other outside contractors; and attending housing court on Defendants' behalf, as needed.

17. Plaintiff did not have assigned hours to complete her work as the property manager. Indeed, she frequently received text messages and phone calls from Defendants' tenants at all hours of the night. Also, because Plaintiff did not typically work at the pawn shop

on Wednesdays, she frequently spent her entire day on Wednesdays fulfilling her property manager duties.

18. Defendants did not keep records of the hours that Plaintiff spent working as a property manager separate from her hours spent working at the pawn shop.

19. On average, Plaintiff estimates that her property management responsibilities took her an additional twenty-five hours per week, separate and apart from either her thirty-two or forty hours (and sometimes more) spent working at the jewelry counter inside the pawn shop.

20. Thus, in sum, between the hours that Plaintiff worked at the pawn shop, and the additional hours that Plaintiff spent working as a property manager, Plaintiff worked, on average, either fifty-seven or sixty-five hours per week, but sometimes more.

21. As one specific example, during the week of February 10 through February 16, 2014, Defendants required Plaintiff to work, and Plaintiff did work, the following schedule at the Lexington Avenue pawn shop:

    Monday, February 10, 2014: 9:00 a.m. to 5:00 p.m.

    Tuesday February 11, 2014: 9:00 a.m. to 5:00 p.m.

    Wednesday, February 12, 2014: Off

    Thursday, February 13, 2014: 10:22 a.m. to 5:39 p.m.

    Friday, February 14, 2014: 8:55 a.m. to 5:48 p.m.

    Saturday, February 15, 2014: 9:17 a.m. to 5:23 p.m.

    Sunday, February 16, 2014: Off

Thus, Plaintiff worked forty hours and sixteen minutes at the Lexington Avenue pawn shop during this week. In addition to this work, Defendants also required Plaintiff to clock out on the

pawn shop timeclock, and then continue to work the additional hours listed below performing property management responsibilities:

    Monday, February 10, 2014: 5:00 p.m. to 9:00 p.m.

    Tuesday, February 11, 2014: 5:00 p.m. to 9:00 p.m.

    Wednesday, February 12, 2014: 9:00 a.m. to 5:00 p.m.

    Thursday, February 13, 2014: 6:00 p.m. to 8:00 p.m.

    Friday, February 14, 2014: 6:00 p.m. to 8:00 p.m.

    Saturday, February 15, 2014: 5:30 p.m. to 8:30 p.m.

    Sunday, February 16, 2014: 10:00 a.m. to 12:00 p.m.

Thus, in sum, during the week of February 10, 2014 through February 16, 2014, Defendants required Plaintiff to work a total of sixty-five hours and sixteen minutes.

22. Throughout her employment, in exchange for her many hours worked each week, including during the example week described in the prior paragraph, Defendants paid Plaintiff $40.00 per hour for her work performed at the Pawn Shop, and overtime at the rate of $60.00 per hour for her pawn shop work in excess of forty hours per week when applicable, but they never paid Plaintiff, at any rate of pay, for any time that Plaintiff spent performing property management responsibilities, and thus not at her straight-time rate of $40.00 per hour for that work for hours up to forty in a week or at her overtime rate of $60.00 per hour for that work when it exceeded forty total hours of work in a week.

23. Throughout the time that Plaintiff performed property management responsibilities, Plaintiff repeatedly asked Defendant Kaminsky for payment in return for her property management work, but Defendant Kaminsky refused to pay her for it, instead frequently promising that he would pay her for it "later."  He never did.

24. Defendants at all times were aware of the requirement to pay Plaintiff at her agreed upon straight-time rate of pay for all hours worked up to forty, and at the rate of time and one-half her straight-time rate for all hours worked over forty in a week, yet they intentionally chose not to do so.

25. Defendants paid Plaintiff on a biweekly basis.

26. On each occasion when they paid Plaintiff, Defendants failed to furnish Plaintiff with wage statements that accurately reflected the amount of hours that she worked per week.

27. Defendants acted in the manner described herein so as to minimize their labor costs and overhead while maximizing their profits.

28. Each hour that Plaintiff worked was for Defendants' benefit.

29. On March 24, 2015, Kaminsky informed Plaintiff that she was longer required to handle the property manager responsibilities for the residential building above the Lexington Avenue pawn shop, and that she would be continuing her jewelry store responsibilities at a different pawn shop location. Accordingly, Kaminsky re-assigned Plaintiff to continue to working for Defendants as a jewelry store employee at Defendants' pawn shop located at 207 Broadway. Plaintiff began working there on March 25, 2015. At that same time, Kaminsky hired another property manager to replace Plaintiff and serve as the full-time property manager for the residential building located above the pawn shop on Lexington Avenue.

30. On May 21, 2015, Plaintiff complained to Defendants that they had, for years, *inter alia*, failed to pay her overtime in violation of the FLSA and NYLL for her time spent working as a property manager, advised Defendants that she had retained counsel to pursue her claims, and demanded payment from Defendants for her unpaid wages, plus liquidated damages.

31.     Beginning the very next month, in June 2015, Defendants refused to provide a chair for Plaintiff to sit in during her eight-hour workday at the new pawn shop, despite the fact that Defendants previously provided Plaintiff with a chair and Defendants provided their other pawn shop employees with chairs to sit in during the workday when they were not assisting customers.

32.     In early November 2015, after Plaintiff, over the prior months, had become more insistent in her desire to recover all compensation that Defendants owed her under the FLSA and NYLL, Defendants reduced Plaintiff's hours to twenty-four per week, thereby greatly cutting her pay. Defendants did not cut the hours of any other employees in such a manner.

33.     On January 6, 2016, Defendant Kaminsky terminated Plaintiff's employment. Upon learning of her termination, Plaintiff asked Kaminsky what basis Defendants had to terminate her. In response, Kaminsky rhetorically stated: "you are suing me. What did you think? You knew I would eventually fire you. What did you think, you would sue me and stay here working for me?" At that time, Kaminsky also pleaded with Plaintiff that she should resolve the case against him "without the lawyers." Plaintiff refused. This was her last day of work for Defendants.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime Under the FLSA*

34.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

35.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for any hours worked exceeding forty in a workweek.

36. As described above, Defendants are employers within the meaning of the FLSA while Plaintiff is an employee within the meaning of the FLSA.

37. As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendants failed to compensate Plaintiff in accordance with the FLSA's overtime provisions.

38. Defendants' actions were in willful violation of the FLSA.

39. Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times her straight-time rate of pay.

40. Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

### SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Overtime Under the NYLL and the NYCCRR*

35. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

36. NYLL § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for any hours worked exceeding forty in a workweek.

37. As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff is an employee within the meaning of the NYLL and the NYCCRR.

38. As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendants failed to compensate her in accordance with the NYLL's and the NYCCRR's overtime provisions.

39. Defendants' actions were in violation of the NYLL and NYCCRR.

40. Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times her straight-time rate of pay.

41. Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and NYCCRR's overtime provisions.

### THIRD CLAIM OF RELIEF AGAINST DEFENDANTS
*Failure to Pay Wages in Violation of the NYLL*

48. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49. NYLL §§ 190, 191, and 663(1) require that employers pay wages to their employees in accordance with the agreed terms of employment.

50. Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff is an employee within the meaning of the NYLL and the NYCCRR.

51. Defendants failed to compensate Plaintiff at her regular rate of pay for each hour that she worked in accordance with her agreed upon terms of employment.

52. Defendants' actions were in violation of the NYLL.

53. At the least, Plaintiff is entitled to recover, at her regular rate of pay, for all hours that she worked for Defendants but for which she was not compensated.

54. Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' failure to pay Plaintiff her wages in accordance with the agreed terms of employment.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

55. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

40. Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times her straight-time rate of pay.

41. Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and NYCCRR's overtime provisions.

### THIRD CLAIM OF RELIEF AGAINST DEFENDANTS
*Failure to Pay Wages in Violation of the NYLL*

48. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49. NYLL §§ 190, 191, and 663(1) require that employers pay wages to their employees in accordance with the agreed terms of employment.

50. Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff is an employee within the meaning of the NYLL and the NYCCRR.

51. Defendants failed to compensate Plaintiff at her regular rate of pay for each hour that she worked in accordance with her agreed upon terms of employment.

52. Defendants' actions were in violation of the NYLL.

53. At the least, Plaintiff is entitled to recover, at her regular rate of pay, for all hours that she worked for Defendants but for which she was not compensated.

54. Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' failure to pay Plaintiff her wages in accordance with the agreed terms of employment.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

55. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

56. N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

57. As described above, Defendants, on each payday, failed to furnish Plaintiff with accurate wage statements containing the criteria required under the NYLL.

58. Prior to February 27, 2015, pursuant to N.Y. Lab. Law § 198(1-d), Defendants are liable to Plaintiff in the amount of $100 for each workweek after the violation occurred, up to a statutory cap of $2,500.

59. On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Retaliation in Violation of the FLSA, 29 U.S.C. § 215(3)*

60. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61. As described above, after Plaintiff lodged a good faith complaint with Defendants about their violations of the FLSA, Defendants retaliated as described above.

62. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

63. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress

and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

64. Additionally, Plaintiff is entitled to liquidated damages, punitive damages for Defendants' malicious, willful, and wanton violations of the FLSA's anti-retaliation provision, and attorneys' fees.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of the NYLL § 215(1)*

65. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

66. As described above, after Plaintiff lodged a good faith complaint with Defendants about their violations of the NYLL, Defendants retaliated as described above.

67. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

68. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

69. Additionally, Plaintiff is entitled to liquidated damages, punitive damages for Defendants' malicious, willful, and wanton violations of the NYLL's anti-retaliation provision, interest, and attorneys' fees.

70. Pursuant to NYLL § 215(2)(b), contemporaneous with the filing of this Complaint, Plaintiff is filing a Notice of Claim with the Office of the New York State Attorney

General, thereby advising the aforementioned of her claim for retaliation under Section 215 of the NYLL.

## **DEMAND FOR A JURY TRIAL**

71. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York laws;

b. Preliminary and permanent injunctions against Defendants, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants, and any and all persons acting in concert with them, from any retaliation against Plaintiff for participation in this litigation in any form;

d. All damages that Plaintiff has sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for the Defendants' unlawful payment practices;

e. All compensatory damages that Plaintiff has sustained as a result of the Defendants' unlawful retaliatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment, emotional distress damages, general and special

    damages for lost compensation and employee benefits that she would have received but for the Defendants' conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

    f.    Punitive damages, as provided by law, in connection with Plaintiff's retaliation claims;

    g.    Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

    h.    Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

    i.    Pre-judgment and post-judgment interest, as provided by law; and

    j.    Granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated: Great Neck, New York
       July 6, 2016

                              Respectfully submitted,

                              BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Tel. (516) 248-5550
Fax. (516) 248-6027

_____
ALEXANDER T. COLEMAN, ESQ. (AC 1717)
MICHAEL J. BORRELLI, ESQ. (MB 8533)
POOJA BHUTANI, ESQ. (PB 1024)

15